1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11  PEOPLE OF THE STATE OF
    CALIFORNIA and THE CITY OF
12  SAN DIEGO,

13                              Plaintiffs,

     vs.
14

15

16  KINDER MORGAN ENERGY
    PARTNERS, L.P., et. al.,
17
                              Defendants.
18

CASE NO. 07-CV-1883 W (AJB)

**ORDER**

**(1) GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS (Doc. No. 6);**

**(2) GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION TO
STRIKE (Doc. No. 10)**

19          On September 26, 2007 Defendants Kinder Morgan Energy Partners, L.P., et. al.
20  ("Defendants") removed this action from San Diego Superior Court to the Southern
21  District of California.  (Doc. No. 1 (*Notice of Removal*).)  Plaintiffs People of the State
22  of California ("People") and The City of San Diego ("The City") allege nuisance,
23  trespass, negligence, business code, and health and safety violations and seek declaratory
24  relief.  (*Id.* Ex. 1 [hereinafter *Compl.*].)  Pending before the Court are Defendants'
25  motions to dismiss the complaint and to strike Plaintiffs' prayer for attorneys' fees and
26  punitive damages.  (Doc. Nos. 6, 10.)  The Court hears the matters on the papers
27  submitted and without oral argument.  See S.D. Cal. Civ. R. 7.1(d.1).  For the following
28  reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion

07cv1883W

to dismiss, and **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' motion to strike.

## I.   BACKGROUND

Plaintiffs are the People of the State of California ("The People") and The City of San Diego ("The City").  (*Compl.* ¶ 10.)  The People have a primary interest in the conservation, control, and utilization of California's water sources.  (*Id.* ¶ 44.)  The City owns 166 acres of land surrounding and underlying Qualcomm Stadium.  (*Id.* ¶ 26.)  The City also enjoys "Pueblo water rights" to the groundwater under the land, which are the highest priority water rights in California.  (*Id.* ¶ 45.)  The City alleges that it is planning to develop this groundwater as a future source of drinking water.  (*Id.*)

Defendants are a related group of business entities who own land immediately adjacent to the City's Qualcomm Stadium property.  (*Id.* ¶ 27.)  Thereon, Defendants operate the Mission Valley Terminal ("MVT"), an industrial facility engaged in the large-scale business of transporting, storing, and distributing petroleum products.  (*Id.*)

Plaintiffs allege that Defendants, commencing at some distant time prior to 1992, have engaged in, and are continuing to engage in, various acts or omissions at the MVT site which have polluted and contaminated the City's property and groundwater.  (*Id.* ¶¶ 32, 33–45.)  By 1992, Plaintiffs allege that 300,000 gallons of liquid petroleum had migrated from the MVT site and contaminated the land and groundwater underneath Qualcomm Stadium.  (*Id.* ¶ 36.)  Plaintiffs contend that as many as 100,000 gallons remain on the land and in the groundwater today.  (*Id.*)

In 1992, the California Regional Water Quality Control Board, San Diego Region ("Regional Board") issued Defendants a "Cleanup and Abatement Order" ("Order") as a result of petroleum contamination at the MVT site.  (*Id.* ¶¶ 33–34.)  The Order included a final cleanup date of January 1, 1996 and instructed Defendants to conduct a site assessment to determine whether contamination had migrated off-site. (*Id.* ¶ 35.)  After concluding that contamination had indeed migrated from the MVT, Defendants

07cv1883W

1   and the Regional Board updated and revised the Order several times.  (*Compl.* ¶¶

2   37–41.)  Plaintiffs allege that Defendants have dragged their feet in complying with the

3   Order's deadlines, and that the Regional Board has been too free in granting generous

4   time and condition extensions to remedy the off-site contamination.  (*Id.*)

5       Presently, the Regional Board's Order establishes an off-site (u.g. Qualcomm

6   Stadium) cleanup deadline of December 31, 2010 for certain chemicals and December

7   31, 2013 for others.  (*Id.* ¶ 41.)  Plaintiffs believe that Defendants are not fulfilling their

8   obligations and will not meet either of the deadlines, especially in light of some newly

9   discovered contamination.  (*Id.* ¶¶ 42–43.)

10       On August 14, 2007 Plaintiffs commenced this action in San Diego Superior

11   Court alleging nuisance, trespass, negligence, business code, and health and safety

12   violations and seeking declaratory relief.  (See generally *Compl.*)  On September 26,

13   2007 Defendants properly removed the action to this Court.  (Doc. No. 1.)  On October

14   3, 2007 Defendants moved to dismiss Plaintiffs' Complaint for failure to state a claim.

15   (Doc. No. 6.)  The same day, Defendants also moved to strike Plaintiffs' prayer for

16   attorneys' fees and punitive damages.[1]  (Doc. No. 10.)  On November 19, 2007 Plaintiffs

17   opposed both motions.  (Doc. No. 20, 21.)  On November 26, 2007 Defendants filed a

18   combined reply.  The Court's Order shall resolve both pending motions.

19   ///

20   ///

21   ///

22   ///

23   **II.   LEGAL STANDARD**

24       **A.   Defendants' Motion to Dismiss Under Rule 12(b)(6)**

25   

26       [1]Also on October 3, 2007 Defendants moved for leave to file their briefs in excess of the page limits allowed by the Southern District Local Rules.  (Doc. No. 12.)  On November 19, 2007 Plaintiffs requested leave to extend the page limits of their Opposition briefs.  (Doc. No. 23.)  The same date, Plaintiffs filed a "conditional non-opposition to Defendants' motion." (Doc. No. 22.)  Good cause showing, the Court **GRANTS** both Defendants' and Plaintiffs' motions for leave to file briefs in excess of the Local Rules' page limits.  (Doc. Nos. 12, 23.)

The Court must dismiss a cause of action if the cause of action fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in the light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court recently explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 1964–65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

Generally, the court may not consider material outside the complaint when ruling on a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the court may consider any documents specifically identified in the complaint whose authenticity is not questioned by the parties. Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. Id. The court may also consider material properly subject to judicial notice without converting the motion into a motion for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citing Mack v. South Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by* Astoria

07cv1883W

Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991)). For these reasons, and because Plaintiffs also rely on certain documents Defendants request to be judicially noticed, the Court **GRANTS** Defendants' request for judicial notice in support of their motions to dismiss and to strike. (Doc. No. 9.)

### B.   Defendants' Motion to Strike Under Rule 12(f)

Rule 12(f) provides that a federal court may strike from the pleadings any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983); Chong v. State Farm Mut. Auto. Ins. Co., 428 F. Supp. 2d 1136, 1139 (S.D. Cal. 2006). Rule 12(f) motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Thus, courts generally grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." LeDuc v. Kentucky Cent. Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992).

## III.   DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6)

### A.   Plaintiffs' Claims Are Not Barred By Any Failure to Exhaust Administrative Remedies

Defendants' first argument broadly asserts that all of Plaintiffs' claims are barred because Plaintiffs have not yet exhausted their administrative remedies. (*Defs.' Mot. to Dismiss* 3–14.) In reaching this conclusion, Defendants' reasoning proceeds as follows: because (A) the City has prior experience working with the Regional Board in developing a MVT clean-up plan, and (B) the City's Complaint contains several allegations attacking and second-guessing the Regional Board's Order(s), therefore (C)

07cv1883W

1   "[t]he City's disagreement with the dates set by the Regional Board is at the heart of this

2   litigation." (*Defs.' Mot. to Dismiss* 3–5.)  Because, Defendants conclude, the City has not

3   first petitioned the State Water Resources Control Board ("State Board") to review the

4   Regional Board's Order, California water law and public policy preclude judicial review

5   of the City's claims.  (*Id.* 5–14.)

6       Plaintiffs argue that their suit involves much more than simply challenging the

7   Regional Board's dates and deadlines.  (*Pls.' Opp'n to Mot. to Dismiss* 4–5.)  Regardless

8   of how long the MVT clean-up is expected to take, Plaintiffs contend that the harm to

9   their own property is substantial, ongoing, and appropriate for judicial remediation. (*Id.*

10  5–9.)

11      The Court agrees with Plaintiffs.

12      California's Regional and State Water Boards are the principal state agencies with

13  primary responsibility for the coordination and control of water quality.  Cal. Water

14  Code § 13001 (Deering 2007).  Among other things, the Boards' policies and procedures

15  govern the investigation, oversight, and remediation of contaminated water for public

16  use.  See, e.g., State Water Resources Control Board Resolution 92-49, Policies and

17  Procedures for Investigation and Cleanup and Abatement of Discharges Under Water

18  Code Section 13304, 1994 WL 1892115 (Cal.St.Wat.Res.Bd. 1992) (amended April 21,

19  1994 and October 2, 1996).  An aggrieved party seeking relief from a Regional Board

20  order must first appeal to the State Board, and judicial review is inappropriate unless

21  and until the party complies with the relevant administrative exhaustion requirements.

22  See Cal. Water Code § 13330.

23      Notably, however, the Water Boards have neither authority nor jurisdiction to

24  award damages to injured parties, and prior State Board Orders emphasize the

25  distinctions between Water Board proceedings and civil actions.  See In the Matter of

26  Order WR 85-06, 1985 WL 20031 at *2 (Cal.St.Wat.Res.Bd. October 17, 1985)

27  (stating that the Boards are not equivalent to courts of general jurisdiction with

28  authority to award damages).  Courts have long held that the Water Boards'

administrative authority, while extensive, does not displace the court's own substantial jurisdiction to declare nuisances and grant damages to injured property owners.  People v. City of Los Angeles, 325 P.2d 639, 642 (Cal. Ct. App. 1958).  Indeed, the California Water Code itself has long reinforced the power of cities to declare, prohibit, and abate nuisances.  Cal. Water Code § 13002(b).  Moreover, neither the Water Code nor the State or Regional Water Boards have the power to limit the right of any person to maintain an appropriate action against a private nuisance or for relief against any contamination or pollution.  Cal. Water Code § 13002(e).

It is then clear that when a plaintiff's claims and a Regional Board's order involve the same common events or facts, the Regional Board's right to govern remediation is not inconsistent with a plaintiff's right to prosecute their damage claims.  See City of Los Angeles, 325 P.2d at 643 (holding that, despite Regional Board's action, plaintiff cities were able to maintain a nuisance action under California Civil Code section 3479).  Simply, the Regional Board does not entertain exclusive jurisdiction to determine whether a nuisance exists and how best to abate it.  Id. at 642.  The fact that the Regional Board has the power to order a defendant to do something does not deprive a court the power to enjoin the same acts.  Id. at 644.  It follows that if a court's original jurisdiction is otherwise proper, the question of exhausting administrative remedies and appeals becomes irrelevant.  Id. at 645.  That is, the existence of an unexhausted administrative process, by itself, does not bar a civil action proceeding on the same common facts.

In this case, Defendants paint Plaintiffs as litigants improperly using this Court to second-guess and override the Regional Board's expert authority on remediating the MVT and off-site contamination.  (Defs.' Reply to Opp'n to Mot. to Dismiss 1–2.)  Defendants' papers then explore—at great length—the administrative review process, while characterizing Plaintiffs' suit as an "end run" around the requirements to challenge a Regional Water Board order.  (Defs.' Mot. to Dismiss 5–14.)  However, Defendants spend little time defending their main assumption: that Plaintiffs' only goal is to

07cv1883W

collaterally attack the Regional Board's "Cleanup and Abatement Order." To the contrary, Plaintiffs press public and private nuisance, trespass, and negligence causes of action—all valid tort claims for recovering property damage.

Defendants' arguments overlook the Court's power, not enjoyed by the Regional Board, to award damages and issue injunctions. Although Plaintiffs' Complaint quibbles about the Board's oft-amended Order and Defendants' lackluster clean-up, Plaintiffs' allegations merely provide context for their civil claims, which are properly before this Court. Cal. Water Code §§ 13002(b), (e); City of Los Angeles, 325 P.2d at 643. Merely voicing displeasure with the pace of abatement does not forfeit Plaintiffs' legal right to recover damages.

Because Plaintiffs' damage claims are not preempted by the simple presence of the Regional Board's Order, whether Plaintiffs first exhausted their administrative remedies is irrelevant. See City of Los Angeles, 325 P.2d at 645 (holding that where jurisdiction is proper, the question of exhaustion is irrelevant). Because a Regional Board abatement order and a civil action for damages can indeed coexist,  not exhausting administrative remedies is not fatal to Plaintiffs' Complaint.[2] Accordingly, the Court **DENIES** Defendants' motion to dismiss all of Plaintiffs' claims on administrative exhaustion grounds.

///

///

B. **The Primary Jurisdiction Doctrine Does Not Bar Plaintiffs' Claims**

Defendants next ask the Court to apply the primary jurisdiction doctrine to

---

[2]Elsewhere, Defendants argue that the Court should strike Plaintiffs' request for injunctive relief, arguing that an injunction might run contrary to the Regional Board's Order or act as an improper collateral attack or constitute "forum shopping." (*Defs.' Mot. to Dismiss* 4–14; *Defs.' Reply to Opp'n to Mot. to Dismiss* 1.)  A determinative ruling on these particular matters is better suited for a motion to strike or for summary judgment.  Today, the Court merely decides the issues necessary to resolve Defendants' Rule 12(b)(6) motion, and the particular items Defendants raise under Rule 12(f).  "The fact that by the prayer of the complaint, plaintiffs ask relief beyond the power of the court to award them, does not detract from the sufficiency of the complaint to state a cause of action... ." People v. City of Los Angeles, 325 P.2d 639, 647 (Cal. Ct. App. 1958).  Thus, the fact that Plaintiffs ask for more than what the Court might ultimately be able to award them is not fatal under Rule 12(b)(6).

dismiss or stay all of Plaintiffs' claims.  (*Defs.' Mot. to Dismiss* 14–17.)  Because, Defendants contend, the expert Regional Board has primary responsibility for remediating contaminated groundwater, the Court should restrain itself from overseeing a clumsy resolution through adversarial litigation.  (*Id.*)

Plaintiffs, on the other hand, stress the primary jurisdiction doctrine's discretionary application and point out that the Water Boards lack authority to award damages or levy penalties.  (*Pls.' Opp'n to Mot. to Dismiss* 10–12.)  Plaintiffs argue that continuing the litigation will not unduly intrude upon the Boards' turf, and that the issues are not so complicated as to be beyond the Court's expertise.  (*Id.* 12–16.)

The Court agrees with Plaintiffs.

A court may have discretion to stay proceedings under the primary jurisdiction doctrine when a claim is originally cognizable in the courts, but is also subject to a regulatory scheme that is enforced by an administrative body of special competence.  Chabner v. United of Omaha Life Ins., 225 F.3d 1042, 1051 (9th Cir. 2000).  In federal and California state courts, no rigid formula exists for applying the primary jurisdiction doctrine.  Id. (citing Farmers Ins. Exch. v. Superior Court, 826 P.2d 730, 739 (Cal. 1992)).  Rather, whether to apply the doctrine hinges on two underlying policies: (1) whether application will enhance court decision-making and efficiency by allowing the court to take advantage of administrative expertise; and (2) whether application will help assure uniform application of regulatory laws.  Id.

In this case, Plaintiffs' claims and supporting allegations do not warrant dismissing the complaint or issuing a stay.  First, deferring to the Water Boards' administrative expertise would not enhance the Court's decision-making or efficiency.  Although the Regional Board has primary authority to remediate contaminated groundwater, the Board does not have the power to levy penalties or award damages.  Accordingly, the Board's "administrative expertise" is not particularly suited (or even able) to make decisions about whether to redress Plaintiffs' property-based torts or penalize Defendants for Proposition 65 violations.  (See, e.g., *Compl. Prayer for Relief* ¶¶ 3, 4, 5.)  Indeed,

such determinations are squarely within the Court's jurisdiction.  Furthermore, the Regional Board has already rendered any threshold findings which might promote the Court's efficiency, such as who caused the MVT contamination.  See AICCO, Inc. v. Insurance Co. of North America, 109 Cal. Rptr. 2d 359, 371 (Cal. Ct. App. 2001) (declining to apply primary jurisdiction doctrine where the administrative body had already rendered whatever decision might have been relevant to the instant case).[3]

Defendants also argue that this case's highly technical issues place it beyond the usual competence of the judicial system.  (Defs.' Mot. to Dismiss 14–15.)  However, the Court, and many other courts, routinely hear complicated environmental tort cases, which blend discreet facts with federal law, state law, and administrative regulations. See, e.g., Marshall v. El Paso Natural Gas Co., 874 F.2d 1373, 1377–78 (10th Cir. 1989) (collecting various state cases), McConnell v. PacificCorp Inc, No. 07-02382 WHA, 2007 WL 2385096 (N.D. Cal. Aug. 17, 2007) (refusing to decline jurisdiction where ultimate facts underlying tort claims would have to be decided by jury, and were not placed by Congress within exclusive administrative jurisdiction); see also In re MTBE, 00-1898 MDL 1358 (SAS), 2007 WL 700819 (S.D.N.Y. March 7, 2007) (holding that "[c]ourts routinely make legal decisions involving technical subject matter and have vast experience in weighing evidence relating to damages and deciding whether to make an award.").

Additionally, Defendants rely on Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Railway, Co., 857 F. Supp. 838 (D.N.M. 1994) to elucidate the complications courts risk when meddling in an administrative agency's expert arena.  See Schwartzman, 857 F. Supp. at 842–44 (analyzing the potential interference between court-ordered injunctive relief and administrative remediation).  However, the

---

[3]Although Plaintiffs also argue that Defendants' delays in remediating the MVT site and complying with the Order weighs in favor of exercising jurisdiction (Pls.' Opp'n to Mot. to Dismiss 11), the Court is hesitant to rule on these arguments today.  Finding that Defendants are delaying, or that the Regional Board is not providing adequate oversight, brings the Court much closer to trodding upon the Regional Board's expertise.  In the context of this Rule 12(b)(6), however, Plaintiffs' claims and requests for damages and civil penalties state a claim for relief and preclude the application of the primary jurisdiction doctrine.

Schwartzman court ruled in the factually developed context of summary judgment, and noted that the primary jurisdiction doctrine more readily precluded jurisdiction when the plaintiff requested specific injunctive relief (as was the case in Schwartzman). Id. at 843. The Schwartzman court then distinguished compensatory damage claims: "[c]ourts refuse to defer jurisdiction if the plaintiff is seeking damages for injury to property or person, as this is the type of relief courts routinely consider." Id. Because under Rule 12(b)(6) the Court must assume all Plaintiffs' allegations are true—including the injunctive relief *and* penalty *and* damage claims—Schwartzman actually strengthens Plaintiffs' argument for the Court to retain jurisdiction.

As Defendants have not indicated how dismissing or staying this case would promote uniform application of regulatory laws, and in addition to all of the aforementioned reasons, the Court finds that, under a Rule 12(b)(6) motion to dismiss, the primary jurisdiction doctrine does not operate to deprive the Court of authority to entertain Plaintiffs' action. Accordingly, the Court **DENIES** Defendants' motion to dismiss all of Plaintiffs' claims on primary jurisdiction grounds.

### C.    Plaintiffs' First Six Claims Are Not Barred By the Statute of Limitations

Defendants next argue that Plaintiffs' six nuisance, trespass and negligence claims are barred by California's three-year statute of limitations for tort actions. (*Defs.' Mot. to Dismiss* 17.) Defendants contend that because Plaintiffs knew or should have known about the alleged infractions well before August 14, 2004 (three years before they filed suit), each claim is time-barred. (*Id.* at 18.)

Plaintiffs, on the other hand, offer two arguments in response: (1) because Defendants' contamination is "continuing" instead of "permanent," the statute of limitations does not bar nuisance and trespass claims; and (2) because the Complaint alleges that Defendants performed wrongful acts within the last three years, Plaintiffs are still entitled to recover for such violations. (*Pls.' Opp'n to Mot. to Dismiss* 16.)

07cv1883W

1    The Court agrees with Plaintiffs, and finds that none of their first six claims are
2    time barred.

3

4         **i.**      *Plaintiffs' First Through Fourth Claims for Nuisance and Trespass*
5    Under the California Civil Code, no lapse of time can legalize a public nuisance,
6    amounting to an actual obstruction of public right.  Cal. Civ. Code § 3490.  Courts
7    construing section 3490 explain that the statute of limitations is no defense to an action
8    brought by a public entity to abate a public nuisance.  <u>Mangini v. Aero-Jet-General
9    Corp.</u>, 281 Cal. Rptr. 827, 838 (Cal. Ct. App. 1991).  Thus, under <u>Mangini</u>, Plaintiffs'
10   second claim, by the City for public nuisance, cannot be time-barred.  Accordingly, the
11   Court **DENIES** Defendants' motion to dismiss the second claim on statute of limitations
12   ground.

13   Other than for public entities alleging public nuisances, California's statute of
14   limitations for tort actions alleging injury to property is three years.  Cal. Civ. Proc. Code
15   § 338(b).  For nuisance claims, the commencement of the statute of limitations varies,
16   depending on whether the nuisance is characterized as "permanent" or "continuing."
17   <u>Wilshire Westwood Assocs. v. Atl. Richfield Co.</u>, 24 Cal. Rptr. 2d 562, 568 (Cal. Ct.
18   App. 1993).  Permanent nuisances occur where a single occurrence causes permanent
19   injury.  <u>Id.</u> at 569.  Under California law, the plaintiff must bring one action for past,
20   present and future damage within three years after the creation of the permanent
21   nuisance.  <u>Id.</u>

22   By contrast, the crucial test for a continuing nuisance is whether an offensive
23   condition can be discontinued or abated at any time.  <u>Id.</u>  If a continuing nuisance
24   exists, a plaintiff may bring successive actions for damages until the nuisance is abated.
25   <u>Id.</u>  That is, every continuation of the nuisance gives rise to a separate claim of damages.
26   <u>Mangini</u>, 281 Cal. Rptr. at 838.  A continuing nuisance may exist even if a defendant's
27   harmful conduct ended more than three years before a plaintiff filed suit.  <u>Id.</u>  This is
28   because the "continuing" nature of the nuisance refers to the continuing damage caused

1   by the offensive condition, not to the acts causing the offensive condition to occur.  Id.

2

3       Historically, applying the statute of limitations for trespass has been the same as

4   for nuisance and has depended on whether the trespass has been continuing or

5   permanent.  Id. at 842.  Whether contamination by toxic waste is a permanent or

6   continuing injury is ordinarily a question of fact turning on the nature and extent of the

7   contamination.  Id. at 841.  The analysis is the same whether a plaintiff claims a public

8   or private nuisance.  Id. at 842 n.15.

9       For both nuisance and trespass claims, a plaintiff may survive a motion to dismiss

10  by alleging facts showing a continuing nuisance or trespass.  See id. at 841–2 (allowing

11  plaintiffs to amend their complaint to state facts showing a continuing nuisance and

12  trespass in order to survive demurrer).

13       In this case, Plaintiffs specifically allege in each of their nuisance and trespass

14  claims that Defendants' contamination and pollution of land and groundwater has

15  "varied over time and can be reasonably abated."  (Compl. ¶¶ 49, 61, 69, 80.)

16  Additionally, Plaintiffs allege that Defendants' contamination and pollution "continues,

17  and threatens to continue, to spread to adjacent properties, and farther into the

18  groundwater supply of the City...."  (Compl. ¶¶ 50, 58, 70.)  In short, each of Plaintiffs'

19  nuisance and trespass claims contain specific allegations that Defendants' offensive acts

20  are continuing and abatable.  (See Compl. ¶¶ 59, 62, 66, 75, 79.)  Because every

21  continuing nuisance and trespass gives rise to a separate claim for damages, the three-

22  year statute of limitations does not bar any of Plaintiffs' claims.  Under Wilshire and

23  Mangini, it is of no moment that Plaintiffs were fully aware of Defendants' actions before

24  August 2004; instead, Plaintiffs' allegations that Defendants' actions are abatable

25  at any time are crucial.[4]  Because Plaintiffs do so allege, the Court **DENIES** Defendants'

26

27       [4]Defendants' Reply argues that because Plaintiffs have disavowed any claim for
    permanent injury, under Capogeannis v. Superior Court, 15 Cal. Rptr. 2d 796, 806 (Cal. Ct.
28  App. 1993) Plaintiffs' action is limited to recovery for actual injury suffered within the three
    years immediately preceding the date they filed their complaint.  (Defs.' Reply to Opp'n to Mot.

motion to dismiss the first, third and fourth claims on statute of limitations grounds.

### ii.   *Plaintiffs' Fifth and Sixth Claims for Negligence and Negligence Per Se*

As mentioned above, California's statute of limitations for tort actions alleging injury to property is three years. Cal. Civ. Proc. Code § 338(b). Where an injury results from a negligent act and injury continues by reason of continued negligence, a recovery may be had for damages caused by the continuing negligence even if the claim for the original injury might be time barred. <u>Nasser v. Hudson Water Ways Corp.</u>, 563 F. Supp. 88, 90 (W.D. Wash. 1983) (citing <u>Fletcher v. Union P.R. Co.</u>, 621 F.2d 902, 907–08 (8th Cir. 1979)).

In this case, Plaintiffs' negligence claims are not time barred because they allege that Defendants have been continually negligent during the last three years. For Plaintiffs' negligence claim, Defendants are alleged to be "continuing to breach their duty of care to the City" by continually taking actions and having knowledge of circumstances which continue to pollute the City's land and groundwater. (*Compl.* ¶¶ 87–89.) Likewise, Plaintiffs allege in their negligence *per se* claim that Defendants "continue" to act in such a manner resulting in the continual discharge of pollutants, harming Plaintiffs' property. (*Compl.* ¶ 95.) Because Plaintiffs allege that Defendants' acts and omissions are ongoing, Plaintiffs state claims that Defendants have been negligent within the past three years. Per <u>Nasser</u>, these claims are still viable. Accordingly, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' fifth and sixth causes of action on statute of limitations grounds.

### D.   <u>Plaintiffs' Sixth Cause of Action Does Not State An Independent</u>

---

*to Dismiss* 5.) Accordingly, Defendants ask the Court to issue an order limiting Plaintiffs' damages. (*Id.*) However, issuing such an order is improper in the narrow context of Rule 12(b)(6), where the Court simply accepts Plaintiffs' allegations as true and decides whether they support a claim for relief. In this case, as mentioned above, Plaintiffs' allegations do support a claim.

07cv1883W

<u>**Claim For Negligence Per Se**</u>

Defendants contend that Plaintiffs' sixth claim for negligence *per se* should be dismissed because negligence *per se* is not an independent cause of action under California law. (*Defs.' Mot. to Dismiss* 19.) Because, Defendants assert, negligence *per se* is merely a means of establishing the standard of care in a negligence action, Plaintiffs fail to state an independent, actionable claim for relief. (*Id.*)

Plaintiffs, in response, argue that when an underlying negligence claim is stated, as is the case here, a plaintiff may properly plead a separate negligence *per se* theory or cause of action. (*Pls.' Opp'n to Mot. to Dismiss* 19.) Plaintiffs further contend that even if their negligence *per se* theory should have been asserted in their negligence claim, this does not mean that the entire negligence *per se* theory should be dismissed. (*Id.* at 20.) Instead, Plaintiffs argue that their pleading, which is to be liberally construed, sufficiently states a cause of action. (*Id.*)

In California, negligence *per se* is "a presumption of negligence [that] arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute." <u>See</u>, <u>e.g.</u>, <u>Hoff v. Vacavill Unified Sch. Dist.</u>, 968 P.2d 522, 530 (Cal. 1998) (citations omitted); <u>Quiroz v. Seventh Ave. Ctr.</u>, 45 Cal. Rptr. 3d 222, 244 (Cal. Ct. App. 2006); <u>Peart v. Perro</u>, 13 Cal. Rptr. 3d 885, 901 n.11 (Cal. Ct. App. 2004). However, "'it is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages.'" <u>California Serv. Station &Auto. Repair Ass'n v. Am. Home Assur. Co.</u>, 73 Cal. Rptr. 2d 182, 190 (Cal. Ct. App. 1998) (quoting <u>Sierra-Bay Fed. Land Bank Ass'n v. Super. Ct.</u>, 277 Cal. Rptr. 753, 761 (Cal. Ct. App. 1991)).

To ensure that the presumption of negligence arises when appropriate, "the Legislature... codified this presumption with the adoption of Evidence Code 669." <u>Hoff</u>, 968 P.2d at 530 (citations omitted); <u>see</u> <u>also</u> <u>Rosales v. City of Los Angeles</u>, 98 Cal. Rptr. 2d 144, 151 (Cal. Ct. App. 2000). Accordingly, because negligence *per se* is simply

07cv1883W

a codified evidentiary doctrine, "the doctrine of negligence *per se* does not establish tort liability." <u>Quiroz</u>, 45 Cal. Rptr. 3d at 244 (italics added).  In other words, even when the requirements of Evidence Code section 669 are satisfied, "this alone does not entitle a plaintiff to a presumption of negligence *in the absence of an underlying negligence action*." <u>Id.</u> (alteration in original); <u>accord</u> <u>Rios v. City of Fresno</u>, 2006 WL 3300452, at *21 (E.D. Cal. Nov. 14, 2006).  Thus, "to apply negligence *per se* is not to state an independent cause of action" because "[t]he doctrine does not provide a private right of action for violation of a statute." <u>Quiroz</u>, 45 Cal. Rptr. 3d at 244 (italics added).

As evidenced by case law and the California Evidence Code, negligence *per se* is merely an evidentiary doctrine and not an independent cause of action.  Accordingly, the City's sixth cause of action does not properly allege facts supporting an independent claim for relief.  Thus, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Plaintiffs' sixth claim for negligence *per se* **WITHOUT PREJUDICE**. Should Plaintiffs wish to either restate their sixth claim or amend their fifth claim to include relevant facts and law supporting a negligence *per se* theory, the Court grants Plaintiffs leave to amend their Complaint.

### E.   The People's Seventh Cause of Action Fails to State a Claim Under Proposition 65

Defendants argue that Plaintiffs' seventh cause of action, an alleged violation of California's Proposition 65, fails to state a claim because the groundwater at issue is only a potential, and not present, source of drinking water.  (*Defs.' Mot. to Dismiss* 20–22.) Plaintiffs respond that State Board Resolution 88-63 wraps potential sources of drinking water with the same protections as existing sources of drinking water.  (*Pls.' Opp'n to Mot. to Dismiss* 21–22.)  Moreover, Plaintiffs argue, case law and other California statutes expansively define "source of drinking water" to bring potentially suitable sources of drinking water within Proposition 65's embrace.  (*Id.* 22–23.)

The Court agrees with Defendants.

In 1986, California voters passed Proposition 65 as an effort to protect their drinking water from contamination. People ex rel. Lungren v. Superior Court, 926 P.2d 1042, 1049 (Cal. 1996); see Cal. Health & Safety Code §§ 25249.5–25249.13. Proposition 65 provides that no person in the course of doing business shall knowingly discharge or release toxic chemicals into water or onto land where such chemical passes or probably will pass into any "source of drinking water." Cal. Health & Safety Code § 25249.5. "Source of drinking water" is further defined as either (1) a present source of drinking water, or (2) water which is identified or designated in a Water Quality Control Plan adopted by a regional board as being suitable for domestic or municipal purposes. Cal. Health & Safety Code § 25249.11(d). The California Supreme Court has held that "source of drinking water" includes any water *currently* destined to be used as drinking water, as well as any water officially designated as suitable for drinking water. Lungren, 926 P.2d at 1050.

The State Water Board issued Resolution No. 88-63 ("Resolution") and added a further gloss to "sources of drinking water," but only as the "sources" are designated in Regional Water Quality Control Plans. State Water Resources Control Board Resolution No. 88-63, Adoption of Policy Entitled "Sources of Drinking Water" (Cal.St.Wat.Res.Bd May 19, 1988).[5] Subject to limited exception, the Resolution states that all of California's surface and ground waters are considered to be (a) suitable, or (b) potentially suitable for use as a drinking water supply,[6] and should be so designated by the Regional Boards. State Water Resources Control Board Resolution No. 88-63, Adoption of Policy Entitled "Sources of Drinking Water" (Cal.St.Wat.Res.Bd May 19, 1988).

---

[5] The full text of Resolution No. 88-63, which the Court will refer to from time to time, can be found on the State Water Board's website at: http://www.swrcb.ca.gov/plnspols/docs/wqplans/res88-63.html

[6] Technically, Resolution No. 88-63 refers to the use as a drinking water supply as use for "Municipal and Domestic Supply (MUN)." MUN includes "uses of water for community, military, or individual water supply systems *including, but not limited to, drinking water supply*." (*Basin Plan* 2-3.) (emphasis added).

The Regional Board's Water Quality Control Plan for the San Diego Basin ("Basin Plan"), consistent with Resolution No. 88-63, broadly asserts that all ground waters in the San Diego Region are considered suitable or potentially suitable as sources of drinking water.  (*Defs.' Req. for Judicial Notice*, Ex. M 2-14 [hereinafter *Basin Plan*].)  To differentiate between "suitable" and "potentially suitable," however, the Basin Plan breaks down *all* beneficial uses of water—including the use for drinking—between "existing" uses and "potential" uses.[7]  (*Id.* 2-7.)  An "existing" beneficial use is where the water quality and quantity is *currently suitable* to allow the use to be attained, such as where a water supply is presently suitable as a source of drinking water.  (*Id.* (emphasis added).)  In contrast, a "potential" beneficial use may be designated when water is only *potentially suitable* as a source of drinking water.  (*Id.* 2-8 (emphasis added).)  The Basin Plan designates the groundwater below Mission Valley (the locus of the land and water rights at issue) as having a potential, and not existing, beneficial use as a source for drinking water.  (*Id.* 2-64.)  Consistent with Resolution 88-63, then, Mission Valley's groundwater is only a potentially suitable source for drinking water.

In this case, Plaintiffs do not state a cause of action for a Proposition 65 violation.  One way to state a valid claim would be for Plaintiffs to allege that Defendants contaminated a "present source of drinking water."  <u>See</u> Cal. Health & Safety Code § 25249.11(d).  However, Plaintiffs' Complaint admits that "[the groundwater] has been utilized for domestic or municipal purposes in the past and is slated to be so utilized in the future."  (*Compl.* ¶ 105.)  The logical inference is that the groundwater is not a current, or present, source of drinking water—merely that it might be available some time in the future.

Alternatively, Plaintiffs could state a claim by alleging that Defendants contaminated groundwater that the Regional Board's Basin Plan designated as suitable for domestic or municipal purposes.  <u>See</u> Cal. Health & Safety Code § 25249.11(d);

---

[7]For example, other potential or existing uses for water include, but are not limited to, the use for Agricultural Supply (AGR), Navigation (NAV), and Hydropower Generation (POW).  (*Basin Plan* 2-3–2-4.)

1    <u>Lungren</u>, 926 P.2d at 1050.  However, the Basin Plan has designated the Mission Valley

2    groundwater as only potentially suitable.  Thus, the Mission Valley groundwater does

3    not fall within Proposition 65's protections.

4           Contrary to Plaintiffs' assertion, interpreting Proposition 65 in light of Resolution

5    88-63 does not extend Proposition 65 protection to potentially suitable sources of

6    drinking water.  The Resolution merely requires Regional Boards to catalog whether *any*

7    surface or ground water found in the State is suitable, or only potentially suitable, as a

8    drinking water source.  Per <u>Lungren</u> and section 25249.11(d), however, only *suitable*

9    sources of drinking water receive Proposition 65 protection.  Moreover, <u>Lungren</u>'s

10   groundwater was undisputedly initially suitable to drink; the real issue was whether a

11   tainted faucet (at the end of the line) could properly be considered a "source" of

12   drinking water.  <u>Lungren</u>, 926 P.2d at 1049–50 (holding that, consistent with the broad

13   protection for drinking water before it comes out of the tap, a defective plumbing fixture

14   was a "source of drinking water.")

15          Plaintiffs also try to import definitions of "drinking water" from other bits of

16   California legislation.  (*Pls.' Opp'n to Mot. to Dismiss* 22.)  However, the Court must

17   interpret "sources of drinking water" as defined in Proposition 65 itself.  Because the

18   groundwater at issue in this case is only potentially suitable as a source of drinking water,

19   the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' seventh claim for

20   failure to state a cause of action under Proposition 65 **WITHOUT PREJUDICE.**[8]

21

---

22          [8]Even if Plaintiffs urge the Court to extend Proposition 65's protections to potentially
     suitable sources of drinking water, such extension is contrary to the statute's purpose and
23   intent.  It is clear that the primary focus of the Act is to protect Californian's drinking water
     from any contaminants that might enter between the "clean" source of the water and eventual
24   discharge from the tap.  <u>Lungren</u>, 926 P.2d at 1049–50.  It is also clear that Resolution 88-63
     requires Regional Boards to designate nearly <u>all</u> surface or ground waters, whatever their
25   current use, as suitable or potentially suitable as sources of drinking water.  Extending
     Proposition 65 to cover potentially suitable sources would greatly extend the reach of the
26   statute, and would lead to absurd circumstances (like, for example, protecting brackish lagoons
     which never could be used for drinking water, but would still be designated "potentially
27   suitable").  See <u>Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist.</u>,
     777 P.2d 157, 168 (Cal. 1989) (holding that "[t]he objective sought to be achieved by a statute
28   as well as the evil to be prevented is of prime consideration in its interpretation."), <u>id.</u> at 167
     ("Where the language of a statutory provision is susceptible of two constructions, one of which,

- 19 -

1

2

3       **F.      The People Cannot Premise Their Unfair Competition Law Claim On**

4               **Alleged Probation Violations or On Alleged Proposition 65 Violations**

5       Defendants argue that the People's attempt to premise their Unfair Competition

6   Law ("UCL") claim on Defendants' alleged probation violations is improper under

7   California and Federal law.  (*Defs.' Mot. to Dismiss* 22–23.)  Plaintiffs, on the other hand,

8   contend that the UCL provides a civil remedy for practices forbidden by law, including

9   "court-made" law.  (*Pls.' Opp'n to Mot. to Dismiss* 23–25.)

10      The Court agrees with Defendants.

11      The Unfair Competition Law defines unfair competition as "any unlawful, unfair

12  or fraudulent business act or practice...."  Cal. Bus. & Prof. Code § 17200; <u>Saunders v.</u>

13  <u>Superior Court</u>, 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994).  "Unlawful" practices

14  are any practices prohibited by law, be it civil or criminal, federal, state, or municipal,

15  statutory, regulatory, or court-made.  <u>Saunders</u>, 33 Cal. Rptr. 2d at 441.  It is not

16  necessary that the predicate law provide for private civil enforcement; the UCL

17  "borrows" violations of other laws and treats them as unlawful practices independently

18  actionable.  <u>Id.</u> at 838–39.

19      In this case, Plaintiffs' entire UCL claim is premised not on alleged violations of

20  civil or criminal statutes, but on alleged violations of probation conditions rendered by

21  a California criminal court against Defendant SFPP only.  While all of Plaintiffs' legal

22  authority for their UCL claim involves claims predicated on statutory laws of general

23  applicability, Plaintiffs provide nothing which suggests that <u>Saunder</u>'s broad reference

24  to "court-made" law extends to state court probation conditions imposed under a plea

25  agreement.  <u>Cf.</u> <u>Schuman v. Ikon Office Solutions, Inc.</u>, 232 Fed. Appx. 659, 664 (9th

26  Cir. 2007) (holding that plaintiff must show a violation of a statute or regulation to

27  _____

28  in application, will render it fair and harmonious with its manifest purpose, and another which
    would be productive of absurd consequences, the former construction will be adopted.")

establish unlawful business practice).[9]  Moreover, Plaintiffs fail to provide any authority suggesting that Defendants Kinder Morgan and Sante Fe Pacific are somehow liable, under any laws, for "aiding and abetting" Defendant SFPP's alleged probation violations.

Plaintiffs even admit that whether a probation violation occurred "will not and cannot be determined by this Court."  (*Pls.' Opp'n to Mot. to Dismiss* 25.)  However, to award relief under Plaintiffs' UCL theory, a finder of fact would necessarily have to find something "unlawful" before it could find "unfair competition."  If, as Plaintiffs concede, the Court is prevented from doing so, Plaintiffs' fail to state a claim under which relief could ultimately be granted.

Regardless of the litigants' real party in interest argument, the Court finds that Plaintiffs cannot premise their UCL claim on Defendant SFPP's alleged probation violations.  Moreover, because the Court has dismissed Plaintiffs' Proposition 65 claim, the seventh cause of action is unavailable as an UCL predicate offense.  Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiffs' eighth cause of action under California's Unfair Competition Law **WITHOUT PREJUDICE**.[10]

### G.   Plaintiffs' Ninth Cause of Action States a Valid Claim For Declaratory Relief

Defendants argue that Plaintiffs' declaratory relief request adds nothing to their substantive claims, and should be dismissed to the same extent as the remaining claims.  (*Defs.' Mot. to Dismiss*. 25–26.)  Plaintiffs contend that because their declaratory relief claim is premised upon other valid claims, they state a valid cause of action.  (*Pls.' Opp'n to Mot. to Dismiss* 29.)

---

[9]Premising UCL claims on probation violations would result in unequal exposure under California's Business and Professional Code, depending on whether a company or individual was subject to probation or not.

[10]Because Plaintiffs' eighth claim for violations of California's Unfair Competition Law has been dismissed without prejudice, the Court finds that Defendants' argument regarding whether or not disgorgement of profits is an appropriate remedy under that claim has been rendered moot.  (*Defs.' Mot. to Dismiss* 24–25.)

07cv1883W

1      The Court agrees with Plaintiffs.

2      The Declaratory Judgment Act does not create any new substantive rights in

3   federal courts, but instead creates a procedure for adjudicating existing rights. 28 U.S.C.

4   §§ 2201–2202; <u>Western Cas. and Sur. Co. v. Herman</u>, 405 F.2d 121, 124 (8th Cir.

5   1968).  For a district court, the appropriate inquiry is to determine whether there are

6   claims in the case that exist independent of any request for purely declaratory relief; that

7   is, claims that would continue to exist if the request for a declaration simply dropped

8   from the case.  <u>Snodgrass v. Provident Life and Acc. Ins. Co.</u>, 147 F.3d 1163, 1167–68

9   (9th Cir. 1998).  The same is true of the California Declaratory Relief Act.  Cal. Civ.

10  Proc. Code § 1060; <u>Silver v. City of Los Angeles</u>, 31 Cal. Rptr. 2d 545, 550 ("Where

11  plaintiff makes no case on the merits and a declaratory relief action would merely

12  produce a useless trial, dismissal is proper.").

13     In this case, Plaintiffs have alleged facts stating valid causes of action for their first

14  five claims.  Thus, these claims exist independently of any request for purely declaratory

15  relief.  <u>Snodgrass</u>, 147 F.3d at 1167–68.  Because Plaintiffs' ninth claim for declaratory

16  relief is properly premised on the other, valid claims, the Court **DENIES** Defendants'

17  motion to dismiss Plaintiffs' ninth claim for declaratory relief.

18  ///

19  ///

20  ///

21  ///

22  **IV.   <u>D</u>EFENDANTS' <u>M</u>OTION TO <u>S</u>TRIKE <u>U</u>NDER <u>R</u>ULE 12(<u>F</u>)**

23         **A.     The Court Strikes Plaintiffs' Requests for Attorney's Fees**

24     Defendants argue that the Court should strike all references to attorneys' fees in

25  the Plaintiffs' Complaint, including all requests in its Prayer for Relief, because there are

26  no statutory or contractual grounds which provide for such recovery.  (*Defs.' Mot. to*

27  *Strike* 3.)  Plaintiffs do not oppose Defendants' motion.  (*Pls.' Opp'n to Mot. to Strike* 1

28  n.1.)  Good cause showing, the Court **GRANTS** Defendants' motion and **STRIKES** all

references to attorneys' fees in Plaintiffs' Complaint, including such requests for attorneys' fees in Plaintiffs' prayer for relief, consistent with Defendants' request on page 1 of their Notice of Motion to Strike. (Doc. No. 10.)

### B.    Plaintiffs' Prayer For Punitive Damages is Proper

Defendants argue that the City, as a municipality with police powers, is not permitted to recover punitive damages under City of Los Angeles v. Shpegel-Dimsey, Inc., 244 Cal. Rptr. 507 (Cal. Ct. App. 1988). (*Defs.' Mot. to Strike* 7–8.) Plaintiffs contend that City of Los Angeles's weight has been heavily discounted by later federal and California appellate decisions, and that the California Supreme Court would likely find that municipalities, like any other private plaintiffs, are entitled to recover punitive damages. (*Pls.' Opp'n to Mot. to Strike* 2–5.)

The Court agrees with Plaintiffs.

In California, a "plaintiff" may recover punitive damages in appropriate cases. Cal. Civ. Code § 3294. A "plaintiff" is a "person" who files a complaint or cross-complaint. Cal. Civ. Proc. Code § 481.180. A "person" can be a natural person, corporation, or a public entity. Cal. Civ. Proc. Code § 481.170. Courts may not rewrite this unambiguous statutory language. Westlands, 953 F.2d at 1111 (citing People v. Skinner, 704 P.2d 752, 758 (Cal. 1985)).

Despite the statutory language, however, in 1988 the California Court of Appeal held that a public entity could not maintain a punitive damages claim against a chemical company that ignored fire code violations and started a destructive fire. City of Los Angeles, 244 Cal. Rptr. at 513–14. The court premised its holding on two independent grounds. First, the public entity (a municipality), unlike a private party, already held a police power to punish the defendants by imposing fines or other penal remedies. Id. at 514. Further punishment, by way of punitive damages, was thus unnecessary under the purported purpose of the punitive damage statute. Id. Second, California Government Code section 818 already barred the award of punitive damages *against* a public entity.

1   Id.  The City of Los Angeles court was convinced that allowing public entities to *collect*

2   punitive damages would foster asymmetry in the law, raising the specter of an equal

3   protection violation.  Id. at 515.

4       In 1992, the Ninth Circuit cast doubt on City of Los Angeles's equal protection

5   argument and allowed a public entity to assert punitive damage claims against a

6   chemical company.  Westlands, 953 F.2d at 1111–13.  Initially, the federal court

7   examined the California statutes' plain meaning and found nothing within the Codes

8   that would lead the California Supreme Court to prevent a public entity from asserting

9   a punitive damages claim.  Id. at 1112.  The court then confronted City of Los Angeles.

10  Id.  First, Westlands noted that, unlike the municipality in City of Los Angeles, the

11  plaintiff water district did not possess comparable police powers to sanction or punish

12  the defendant.  Id. The court then dismissed City of Los Angeles's equal protection

13  concerns, finding that under California law a rational basis existed for the distinction

14  between allowing public entities to recover punitive damages while denying recovery of

15  punitive damages from public entities.  Id. at 1113 (reviewing McAllister v. South Coast

16  Air Quality Mgmt. Dist., 228 Cal. Rptr. 351 (Cal. Ct. App. 1986)).  The Westlands

17  court believed that the California Supreme Court would agree with their analysis.  Id.

18  However, Westlands specifically limited its scope, holding only that City of Los Angeles

19  should not be applied to water districts with limited rule-making authority.  Id.

20      Also in 1992, a California Court of Appeal explicitly disagreed with City of Los

21  Angeles and permitted a public entity (a city) to assert a punitive damages claim against

22  a chemical company.  City of Sanger v. Superior Court, 10 Cal. Rptr. 2d 436, 439 (Cal.

23  Ct. App. 1992), petition for review denied Cal. Supreme Court Minute 10-16-1992.

24  First, the City of Sanger court found that allowing public entities to maintain punitive

25  damage claims was consistent with the unambiguous, plain meaning of the relevant

26  California Civil and Civil Procedure statutes.  Id. at 437–38.  The court also found that

27  allowing a public entity to claim punitive damages was compatible with the purpose of

28  the punitive damages statute, even if the party against whom punitive damages were

1  imposed could have also been punished through a municipality's police power. Id. at

2  438. City of Sanger then found a rational basis for allowing public entities to recover

3  punitive damages while protected by California Government Code section 818, even

4  when the public entity wielded a police power to punish and deter wrongdoers. Id. at

5  439 (reviewing McCallister, 228 Cal. Rptr. at 351).   The court concluded by

6  emphasizing City of Los Angeles's difficulties in application, in which courts require

7  collateral factual and legal findings on whether a public entity enjoys a police power,

8  and, if so, what type of punishments it can mete out. Id. Subsequently, the California

9  Supreme Court denied the parties' petition to review City of Sanger. Id.

10     A more recent California Court of Appeal decision also allowed a public entity

11 to assert a punitive damage claim. City of Glendale v. Superior Court, 116 Cal. Rptr.

12 2d 16, 19 (Cal. Ct. App. 2002). In doing so, City of Glendale distinguished City of Los

13 Angeles, while wholly approving City of Sanger's reasoning. Id. First, City of Glendale

14 found that the plain language of California Civil Code section 3294 permitted all

15 plaintiffs, whether public or private, to recover punitive damages in appropriate cases.

16 Id. And although Glendale seemed to possess less police power than Los Angeles, the

17 court agreed with City of Sanger that the public purpose advanced by imposing punitive

18 damages is furthered even if the party against whom the punishment is imposed could

19 have been punished through a municipality's police power. Id. at 19–20 (citing City of

20 Sanger, 10 Cal. Rptr. at 438). Finally, City of Glendale agreed that a rational basis

21 existed for permitting a public plaintiff to pursue punitive damages while protected by

22 California Government Code section 818. City of Glendale, 116 Cal. Rptr. 2d at 20.[11]

23     Where the state's highest court has not decided an issue, the federal court's task

24 is to predict how the state high court would resolve it. Westlands Water Dist. v. Amoco

25 Chem. Co., 953 F.2d 1109, 1111 (9th Cir. 1992).   The decisions of the state's

26

27     [11]Another California Court of Appeal case relied on both City of Glendale and City of
   Sanger in stating that punitive damages can be enforced in private litigation brought by any
28 plaintiff, including public entities bringing a tort action.   21st Century Ins. Co. v. Superior
   Court, 26 Cal. Rptr. 3d 476, 485–86 n.9 (Cal. Ct. App. 2005).

07cv1883W

intermediate appellate courts provide guidance that a federal court must consider in undertaking this analysis.  Id.  When an intermediate appellate court has ruled on an issue, federal courts will follow the intermediate court's decision unless there is convincing evidence that the state supreme court would decide differently.  Id.

In this case, the Court declines to follow City of Los Angeles and finds convincing evidence that the California Supreme Court would consider City of Sanger to be the better reasoned decision.  First, every state and federal case subsequent to City of Los Angeles has found that the California Codes' plain meaning unambiguously permits public entities to pursue punitive damages.  Moreover, both California appellate court decisions have found that the purpose of the punitive damages statute is advanced even when a municipality has the additional police power to punish a defendant.  Finally, each subsequent decision has uniformly dismissed City of Los Angeles's equal protection concerns, finding that a rational basis exists for allowing a municipality to claim punitive damages, while at the same time they are protected from punitive damage claims against them.

Recent decisions cite approvingly of City of Sanger's analysis; City of Los Angeles has been repeatedly criticized and has failed to gain traction in California's lower courts. For all of these reasons, the Court is convinced the California Supreme Court will follow City of Sanger and **DENIES** Defendants' motion to strike Plaintiffs' claims for punitive damages.

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Motion to Dismiss, and **GRANTS-IN-PART** and **DENIES-IN-PART** Defendants' Motion to Strike.  (Doc. Nos. 6, 10.)

Specifically:

1.    The Court **GRANTS** Defendants' Motion for Leave to File Excess Pages. (Doc. No. 12.)

07cv1883W

2.    The Court **GRANTS** Plaintiffs' Motion for Leave to Extend the Page Limit of Local Civil Rule 7.1(h). (Doc. No. 23.)

3.    The Court **DENIES** Defendants' Motion to Dismiss all of Plaintiffs' claims because Plaintiffs do not have to exhaust any administrative remedies.

4.    The Court **DENIES** Defendants' Motion to Dismiss all of Plaintiffs' claims because the primary jurisdiction doctrine does not bar Plaintiffs' suit.

5.    The Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' first six causes of action because none of the first six claims are barred by the statute of limitations.

6.    The Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' sixth claim for negligence *per se* and **DISMISSES** Plaintiffs' sixth claim **WITHOUT PREJUDICE** because Plaintiffs do not state an independent cause of action.

7.    The Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' seventh claim for violations of Proposition 65 and **DISMISSES** Plaintiffs' seventh claim **WITHOUT PREJUDICE** because Plaintiffs do not allege that Defendants contaminated a source of drinking water.

8.    The Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' eighth claim for violations of California's Unfair Competition Law and **DISMISSES** Plaintiffs' eighth claim **WITHOUT PREJUDICE** because Plaintiffs do not properly allege any predicate unlawful act on which the Unfair Competition Law depends.

9.    The Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' ninth claim for declaratory relief because Plaintiffs properly premise their request for declaratory relief on independent, valid claims.

10.    The Court **GRANTS** Defendants' Motion to Strike all references to attorneys' fees in Plaintiffs' Complaint and Prayer for Relief and **STRIKES** all references to attorneys' fees.  Plaintiffs have not opposed Defendants'

07cv1883W

1   motion.

2   11.   The Court **DENIES** Defendants' Motion to Strike Plaintiffs' prayer for

3        punitive damages because convincing evidence suggests that the California

4        Supreme Court will allow a public entity to pursue a punitive damages

5        claim.

6   12.   The Court grants Plaintiffs **thirty (30) days** leave to amend their

7        pleadings, should they wish to do so.

8

9

10

11   **IT IS SO ORDERED.**

12

13   DATED:  February 29, 2008

14

15                              Hon. Thomas J. Whelan
16                              United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

07cv1883W