# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA AND THE CITY OF SAN DIEGO,<br><br>          Plaintiffs,<br>     vs.<br><br>KINDER MORGAN ENERGY PARTNERS, L.P. et al.,<br><br>          Defendants. | CASE NO. 07-cv-1883 MMA (WVG)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CITY OF SAN DIEGO'S FIFTH CAUSE OF ACTION (NEGLIGENCE)**<br><br>[Doc. No. 119] |

Plaintiffs the People of the State of California and the City of San Diego (the "City") filed this action against Defendants Kinder Morgan Energy Partners, L.P. and several related entities ("Kinder Morgan"), and one named individual, Scott Martin. Plaintiffs allege several causes of action for environmental damage to the soil and groundwater on a 166-acre section of property owned by the City. Currently before the Court is Kinder Morgan's Motion for Partial Summary Judgment as to the City's Fifth Cause of Action for Negligence. [Doc. No. 119.] For the reasons stated herein, the Court **DENIES** Kinder Morgan's motion for partial summary judgment.

# BACKGROUND

This action arises from events surrounding the contamination and remediation of soil and groundwater on approximately 166 acres of City-owned land surrounding and underlying Qualcomm Stadium in San Diego, California (the "Property"), and groundwater subject to the City's Pueblo water rights ("Groundwater"). [First Amended Complaint ("FAC") Doc. No. 32 ¶ 26.] Kinder Morgan owns land adjacent to the Property, on which it operates the Mission Valley Terminal ("MVT"). [Id at ¶ 27.] The MVT is an industrial facility engaged in the business of transporting, storing, and distributing petroleum products. [Id.]

The following facts are not reasonably in dispute. The City was on notice, as early as 1992, that Kinder Morgan and its predecessors released petroleum products into the groundwater and soil, resulting in contamination and pollution of the City's Property and Groundwater. [Id. at ¶ 30; Defs.' Stmt. Of Uncontroverted Facts ("SUF") ¶ 1.] In 1992, the California Regional Water Quality and Control Board ordered the investigation and remediation of contamination at the MVT. Since 1992, the City has received copies of Kinder Morgan's reports to the Regional Board, and provided input in the Regional Board's oversight of remediation efforts. [Id. at ¶ 2.]

From 2001 through 2004, the City considered suing Kinder Morgan for damages allegedly caused by the petroleum releases. [Id. at ¶ 3.] Plaintiffs filed this lawsuit on August 14, 2007. [Doc. No. 1.] Plaintiffs allege a myriad of claims, including claims for public nuisance, private nuisance, trespass, negligence, violation of California Health and Safety Code section 25249.5,[1] violation of California Business and Professions Code section 17200, and a request for declaratory relief. [*See* FAC.] However, only the viability of the City's Fifth Cause of Action for Negligence is currently before the Court.

Since 2004, dozens of releases have been reported at the MVT. [Pls.' Separate Stmt. of Facts ("SSF") ¶ 2.] A monitoring well, at which data is gathered to gauge the free product (the thickness of petroleum products), shows an increase of free product from .06 feet on July 9, 2010 to .15 feet of free product on September 14, 2010. [Id. at ¶ 3, citing Exh. B "Remedial Progress

---

[1] On June 8, 2010, the Court granted Kinder Morgan's Motion for Summary Judgment as to the People's Sixth Cause of Action for Violation of California's Health and Safety Code section 25249.5. [Doc. No. 98]

1 Evaluation Report".]

2 The parties do dispute whether Defendants' remediation system has been effective at preventing the migration of pollution from the releases at the MVT to the City's Property, and the extent to which pollutants from releases since 2004 have migrated to the Property. They also contest whether Defendants' agent discovered new contamination on the City's Property, or whether the area of contamination was merely "newly delineated" at that time. [Id. ¶ 5, Exh. I, "Groundwater Monitoring and Remedial Progress Report".]

**LEGAL STANDARD**

A party may move for summary judgment on all or part of its claims. FED. R. CIV. P. 56(a). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.[2] "The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Id*.

"[T]o defeat a properly supported motion for summary judgment . . . the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997), quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). When assessing the record to determine whether there is a "genuine issue for trial," the court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in [its] favor." *Horphag*, 475 F.3d at 1035 (citation omitted). The court may not make credibility determinations; nor may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. The ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at

---

[2] Although Federal Rule of Civil Procedure 56 was revised and reorganized as of December 10, 2010, "[t]he standard for granting summary judgment remains unchanged." Advisory Committee's Notes for 2010 Amendments to Rule 56.

251-52.

**DISCUSSION**

Kinder Morgan makes two primary arguments for summary judgment on the City's fifth cause of action. First, Kinder Morgan asserts the City knew the property at issue was contaminated well before the statute of limitation cut-off date, and therefore the City's negligence claim is barred. Second, Kinder Morgan asserts any claim for releases within the statutory period must also fail because the City has no evidence of damages, nor could the City have suffered damages because harm to the City was complete prior to the cut-off for the statute of limitation.

**I. STATUTE OF LIMITATION**

Under California law, claims for injury to real property are subject to a three year statute of limitation. CAL. CODE. CIV. P. § 338(b). The limitation period generally begins to run "when the last [element] essential to the cause of action occurs." *San Francisco Unified School Dist. v. WR Grace*, 37 Cal. App. 4th 1318, 1326 (1995). "If the last element to occur is the element of damage, the statute of limitation begins to run upon the occurrence of 'appreciable and actual harm, however uncertain in amount,' that consists of more than nominal damages." *Id.*, quoting *Davies v. Krasna*, 14 Cal.3d 502, 514 (1975). In tortious injury to property cases, "the harm implicit in a tortious injury to property is harm to the property itself, and thus to any owner of the property once the property has been injured." *CAMSI IV v. Hunter Technology Corp.*, 230 Cal. App. 3d 1525, 1534-35 (1991).

Evidence in the record supports Kinder Morgan's contention that the City had knowledge of harm to its Property and Groundwater from contamination nearly 20 years prior to when it filed suit on August 14, 2007. In 1992, the Regional Water Quality Control Board for the San Diego Region issued a cleanup and abatement order requiring the entities involved with the MVT to investigate and remediate contamination. Since 1992, the City has received copies of Kinder Morgan's reports to the Regional Board regarding remediation efforts. [*See e.g.,* Broderick Decl. at ¶ 6, Exh. E.] City personnel testified that they learned of the contamination throughout the 1990's. [Broderick Decl. at ¶ 4, Exh. 3, Depo. of Tel Olsen at 64:6-8 (aware of contamination by "approximately 1996".)] Evidence also shows the City considered suing Kinder Morgan in 2001.

[Broderick Decl. At ¶ 8, Exh. 7 Depo. of Lowenberg at 69:11-71:2.]  In sum, ample evidence shows the City was well aware of harm to the Property more than three years before the City filed suit in 2007.

The City does not challenge Kinder Morgan's evidence that it was aware of harm to its Property as early as 1992.  Rather, the City asserts that its negligence claim is based only upon the releases occurring on or after the cut-off for the statute of limitation period.  [Pl.'s Mem. P. &. A. Doc. No. 123, p.12 ("The City's negligence action is based on negligent or reckless releases . . . at the MVT on or after August 14, 2004, not on the releases . . . which occurred earlier than August 14, 2004."); id at p.10 ("The City has pled simply that Defendants' post-August 14, 2004 releases and conduct have injured the City.  These are new torts.").]  Thus, the Court construes the City's negligence claim as based only on releases occurring within the statutory period.  Accordingly, the City's negligence claim is not barred by the statute of limitation, and summary judgment is not warranted on this ground.  Because the City's negligence claim is based only on releases within the statutory period, the Court need not determine whether negligence claims based on releases prior to August 14, 2004 are barred by the three-year statute of limitation.

## II. NEGLIGENCE CLAIM FOR RELEASES ON OR AFTER AUGUST 14, 2004

Kinder Morgan next asserts the City's negligence claim cannot be based on releases occurring on or after August 14, 2004 because it has no evidence of independent or distinct damages from those releases.  They also contend that under the City's own theory of recovery, it would be impossible to suffer damages from releases on or after August 14, 2004 because the alleged harm claimed already occurred before August 14, 2004.

### A. Evidence of Damages from Releases On or After August 14, 2004

Kinder Morgan largely relies on *In re MTBE Products Liability Litigation* for the proposition that a plaintiff must prove independent and distinct damages from the releases it alleges occurred after August 14, 2004. [Defs.' Mem. P.&.A., Doc. No. 119, p.10-11, citing 676 F. Supp.2d 139, 152 (S.D.N.Y. 2009) (interpreting California law).  The *In re MTBE* district court analyzed the plaintiff's claims for alleged releases that occurred within the statutory period, and explained:

> [I]f there are two separate and distinct releases at a single site, each release must be analyzed independently . . . to the extent that [plaintiff] suffered appreciable harm due to a distinct release that occurred [within the statutory period], its claim as to the harm caused by that release is not barred by the statute of limitation.

*Id.* at 152 (emphasis added).

To the extent Kinder Morgan interprets the *In re MTBE* court's use of the term "harm" as requiring a plaintiff show evidence of the measure or amount damages, the Court disagrees. The *In re MTBE* court explained that a plaintiff must show releases resulted in "appreciable harm" to sustain a timely claim under the statute of limitation. *In re MTBE*, 676 F. Supp. 2d at 152. Under a statute of limitation analysis, a party need only show infliction of appreciable and actual harm, and no "uncertainty as to the amount of damages nor difficulty in proving damages" is pertinent to the inquiry. *Davies,* 14 Cal. 3d at 514.

Moreover, it would be premature on the present record to conclude the City has no evidence of the measure or amount of damages because discovery is not complete. *See, e.g., Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1201-02 (C.D. Cal. 2003), *affirmed* 433 F.3d 1260 (issue of whether property owner could recover damages for alleged tortious injury to property was premature at summary judgment stage because fact issues remained as evidence had not yet been entered regarding diminution in value damages or whether such damages exceeded cost of remediation.). "[I]f a nonmovant shows by . . . declaration that, for specified reasons, it cannot present facts essential to justify its proposition, the court may . . . deny [the motion]." FED. R. CIV. P. 56(d)(1). The City has shown Kinder Morgan moved for summary judgment before fact discovery was complete. [Doc. No. 123-13, Decl. Tekosky, ¶ 2(a)-(c).] In addition, expert reports had not been written, which the City expects to contain analysis and opinion on facts relating to the releases on or after August 14, 2004. [Id.] Indeed, the parties jointly requested the Court to extend fact discovery and discovery pertaining to expert reports until 2012, which the Court granted. [*See* Doc. No. 143.]

Kinder Morgan also asserts the City cannot produce evidence of damages because it has not yet done so despite three court orders to produce damages information in response to Kinder Morgan's interrogatories. Indeed, the Court sanctioned the City for failing to obey its prior orders regarding the interrogatories, and thereby engendering unnecessary work. [Doc. No. 135.] But the

1 Court's orders regarding the City's inadequate responses to interrogatories are not material to the
2 present assessment on summary judgment motion of whether the City is capable of producing
3 evidence of damages.  As explained above, the City has shown additional factual issues remain to
4 be developed.  Thus, summary judgment is not appropriate on this ground at this time.

5      Kinder Morgan also appears to use the terms "damages" and "harm" interchangeably to
6 argue that the City must provide evidence that it could have sustained harm from releases
7 occurring on or after August 14, 2004.  *In re MTBE*, 676 F. Supp. 2d 139 at 152; *Davies v. Krasna*,
8 14 Cal.3d 502, 514 (1975) (cause of action accrues upon showing of appreciable harm).  In
9 response, the City asserts it has produced evidence of additional harm to the Property and
10 Groundwater, and that the releases occurring on or after August 14, 2004 are a proximate cause of
11 the harm.  (Pls.' Resp., Doc. No. 123, p.5.]  Kinder Morgan avers the City's causation argument is
12 irrelevant because it moves for summary judgment on grounds that the City cannot show evidence
13 of damages.  In doing so, Kinder Morgan argues that to show evidence of damages, the City must
14 "tie the harm to the releases."  [Defs'. Reply, Doc. No. 127, p.9.]  The difference in verbiage is
15 immaterial.  At the heart of the matter, Kinder Morgan argues there is a lack of evidence of harm
16 that could be attributed to the releases after 2004.

17      The City has, however, presented evidence of harm, and has created a triable issue of fact
18 regarding the extent to which releases after August 14, 2004 have harmed the City's Property and
19 Groundwater.  Specifically, the City presents evidence that: (i) dozens of releases have occurred
20 after the August 14, 2004 statute of limitation cut-off [Foust Decl. at ¶¶ 10, 11, Exh. I,  and Exh.
21 J]; (ii) in 2009, Defendant's agent delineated a new area on the City's property that was
22 contaminated [id at ¶ 8, Exh. G ]; and (iii) that a monitoring well showed an increase in the
23 thickness of petroleum products [id at ¶ 3, Exh. B].

24      Kinder Morgan contends the evidence suggests the recently discovered area of
25 contamination was merely the result of an old plume, and resulted from old releases.  [Defs.'
26 Reply, Doc. No. 127, citing Broderick Reply Dec. ¶ 5, Ex. D.] Kinder Morgan also argues the rise
27 in free products may be due to remediation work, and is not the result of new releases.  [Id. at. ¶ 6,
28 Ex. E.]  A trier of fact could also conclude, as the City suggests, that the evidence supports the

1 reasonable inference that the releases occurring after August 14, 2004 harmed the Property.  The
2 Court does not resolve such competing inferences on summary judgment.

### B. Potential for Harm from Releases On or After August 14, 2004

Alternatively, Kinder Morgan asserts the City's own theory of recovery precludes any possibility that the City could have suffered harm from releases occurring after August 14, 2004. Kinder Morgan avers the City claims two harms: inability to redevelop the property and inability to use the groundwater aquifer until the petroleum contamination is removed.  Because both of these conditions would have occurred regardless of any releases after August 14, 2004, Kinder Morgan argues additional contamination could not have created further harm.  The City disagrees as to Kinder Morgan's characterization of the harms the City claims.

"[T]he harm implicit in a tortious injury to property is harm to the property itself." *CAMSI IV*, 230 Cal. App.3d at 1534-35.  In the context of harm to property due to releases, "the issue is not so much to what extent a plaintiff 'may be aware of wrongdoing before damage arises,' but when the wrongful act causes appreciable harm - *i.e.*, an injury.  Each alleged release has the potential to contaminate the groundwater." *In re MTBE*, 475 F. Supp. 2d 286, 295 (S.D.N.Y. 2009) (quoting *San Francisco*, 37 Cal. App. 4th at 1333.)

Kinder Morgan's argument does not resolve the factual dispute regarding the extent to which the Property and Groundwater was contaminated from releases occurring after August 14, 2004.  Kinder Morgan presumes the only harms relevant to the present inquiry are the property owner's inability to redevelop the property or use the groundwater aquifer.  But harm to the property itself is material, and each alleged release on or after August 14, 2004 has the potential to contaminate the Property and Groundwater. *See, In re MTBE*, 475 F. Supp. 2d at 295; *see also San Francisco,* 37 Cal. App. 4th at 1336.  The City claims more harms than Kinder Morgan identified, and these include harm to the Property and Groundwater itself.  [FAC ¶¶ 87-91; *see also* Pl.'s Resp., Doc. No. 123, p. 4-5.]  As explained above, the City presents evidence sufficient to raise a triable issue of fact regarding the extent to which the alleged August 14, 2004 releases contaminated the Property.  [*See supra*, section II. A.]  Therefore, summary judgment is not appropriate on this ground.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion for Partial Summary Judgment as to the City's Fifth Cause of Action for Negligence.  [Doc. No. 119.]

**IT IS SO ORDERED.**

DATED: June 24, 2011

Hon. Michael M. Anello
United States District Judge